**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARVIN BANKS,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | **CIVIL ACTION NO. 3:19-CV-0427** |
| **v.** | : | |
| | : | **(Judge Caputo)** |
| **TERRY SMITH**, *et al.,* | : | |
| | : | |
| **Defendants** | : | |

**M E M O R A N D U M**

## I.    Introduction

Plaintiff Marvin Banks, an inmate presently housed at the Benner Township State Correctional Institution (SCI-Benner), in Bellefonte, Pennsylvania, commenced this civil rights action pursuant to 42 U.S.C. § 1983 on March 6, 2019.  (ECF No. 1.)  Prior to the Court screening Mr. Banks' Complaint, he filed a "supplemental complaint," supporting declarations and exhibits.  (ECF Nos. 10, 11, 12 and 14.)  Mr. Banks simultaneously sought leave to proceed *in forma pauperis* (ECF Nos. 3 and 8) and a request appointment of counsel (ECF No. 2).

For the reasons set forth below, and pursuant to 28 U.S.C. § 1915 and §1915A, the Court will grant Mr. Banks' request to proceed *in forma pauperis,* dismiss portions of the Complaint, dismiss the Supplemental Complaint in its entirety, and grant Plaintiff leave to file an all-inclusive amended complaint.  His motion for counsel will be denied without prejudice.

## II.     Standard of Review for Screening *Pro Se In Forma Pauperis* Complaints

When a litigant seeks to proceed *in forma pauperis*, without payment of fees, 28 U.S.C. § 1915 requires the court to screen the complaint.  *See* 28 U.S.C. § 1915(e)(2)(B).  Likewise, when a prisoner seeks redress from a government defendant in a civil action, whether proceeding *in forma pauperis* or not, the court must screen the complaint.  *See* 28 U.S.C. § 1915A(a).  Both 28 U.S.C. § 1915(e)(2)(B) and § 1915(A) give the court the authority to dismiss a complaint if it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915(e)(2)(B)(i) -(iii); 28 U.S.C. § 1915A(b)(1)-(2); *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013).

A complaint is frivolous if it lacks an asrguable basis either in law or fact.  *See Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (citing *Neitzke v. Williams*, 490 U.S. 319, 327-28, 109 S.Ct. 1827, 1832-33, 104 L.Ed.2d 338 (1989)).  In deciding whether the complaint fails to state a claim on which relief may be granted, the court employs the standard used to analyze motions to dismiss under Fed. R. Civ. P. 12(b)(6).  *See Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000).  Under Rule 12(b)(6), the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79, 129 S.Ct. 1937, 1949-50, 173 L.Ed.2d 868 (2009)).  The court may also rely on exhibits attached to the complaint and matters of public record.  *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . ."  Fed. R. Civ. P. 8(a)(2).  A complaint is required to

provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007)).

To test the sufficiency of the complaint, the court "must take three steps." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, a court must "take note of the elements a plaintiff must plead to state a claim." *Id.* (internal quotations and brackets omitted). Second, the court must identify allegations that are merely legal conclusions "because they . . . are not entitled to the assumption of truth." *Id.* While detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007)). Third, a court should assume the veracity of all well-pleaded factual allegations and "then determine whether they plausibly give rise to an entitlement to relief." *Connelly*, 809 F.3d at 787 (quoting *Iqbal*, 556 U.S. at 679, 129 S.Ct. at 1949).

A complaint filed by a *pro se* plaintiff must be liberally construed and "held 'to less stringent standards than formal pleadings drafted by lawyers.'" *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015) (citing *Haines v. Kerner*, 404 U.S. 519, 520 - 21, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972)); *see also Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007). Yet, even a *pro se* plaintiff "must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted). A court must grant *pro se* litigants leave to file a curative amended complaint even when a plaintiff does not seek

leave to amend, unless such an amendment would be inequitable or futile.  *See Estate of Lagano v. Bergen Cnty. Prosecutor's Office*, 769 F.3d 850, 861 (3d Cir. 2014).

## III.    Allegations of the Complaint and Supplemental Complaint

### A.    Complaint

Mr. Banks names the following Pennsylvania Department of Corrections (DOC) Central Office employees as Defendants in his Complaint:  Tracy Smith, Director of Bureau of Treatment Services; Michael Wenerowicz, Eastern Regional Deputy; and John Wetzel, Secretary.  Plaintiff also names the following SCI-Benner employees as Defendants:  Superintendent Robert Marsh and Chaplain Matthew McCoy.  All Defendants are named in their individual capacities, only Regional Deputy Wenerowicz is named in his official capacity.  (ECF No. 1.)

Mr. Banks, a Native American, alleges that on September 19, 2018, Director Smith and Regional Deputy Wenerowicz denied his religious accommodation request for a sweat lodge.  The DOC does not allow sweat lodges "for compelling governmental interests of safety, security and fiscal responsibility."  (*Id.* at 5 and 21.)  Mr. Smith and a non-defendant advised Mr. Banks that he "may choose to seek other means of purification available to inmates by participating in smudging and prayer."  (*Id.*)  Secretary Wetzel, Superintendent Marsh and Chaplain McCoy "were informed of [this] violation but did nothing."  (*Id.* at 4.)

Mr. Banks also claims that "the P.A. state prisons [are] violating Native American rights and purposefully because they refused to answer survey sent out in 1992 their negligence and discrimination has lead to our religious intrusion."  (*Id.* at 4.)  He

references the summary portion of the Native American Rights Fund's 1992 survey of state and federal correctional facilities concerning policies and practices afforded Native American inmates. (*Id.* at 7.) Plaintiff argues that the DOC's failure to respond to the survey demonstrates its history of violating the rights of Native American inmates "for 27 years". (*Id.* at 7.) Mr. Banks attaches a document entitled "Attorney General Directive" "to protect the free exercise and related equal protection rights of Native American prisoners" which was drafted by the National Native American Prisoner Rights Advocates' Coalition (NNAPRAC) in 1995. (*Id.* at 8 – 10.)[1] Based on the Defendants non-compliance with this document, Mr. Banks alleges they are violating his First and Fourteenth Amendment rights.

Additionally, Mr. Banks argues that Native American inmates "aren't being afforded equal treatment as the popular religions". (*Id.*) Native American inmates "are not being rehabilitated according to [their] nations and societies," and may not wear traditional hairstyles. (*Id.*)

Mr. Banks resides in a mental health treatment unit at SCI-Benner and suffers from depression. He takes medication and sees a psychologist. He suffers from increased depression because the DOC does not permit him to practice his religion "in [his] way." (*Id.*) He uses art therapy to cope with the stress.

As relief for the violation of his First and Fourteenth Amendment rights, Mr. Banks seek the Court to mandate the DOC provide sweat lodges for the Native

---

[1] This document as well as the summary survey results are attachments to a May 1996 report on the *Study of Native American Prisoner Issues* written by Walter Echo-Hawk for the National Indian Policy Center at George Washington University, Washington, D.C. *See* *https://narf.org/nill/documents/NARF_PRISONER_ISSUES.pdf* (last visited May 23, 2019).

American population, "full religious freedom and equal protections," monetary damages and "apology letters to himself and the Native communities in other prison[s]." (*Id.*)

## B. Supplemental Complaint

On April 11, 2019, Mr. Banks filed a "Supplemental Complaint" naming the following SCI-Benner employees as Defendants: Lt. Stavolla; Corrections Officer (CO) Gass and CO Musslemen. He claims these individuals violated his religious rights and have retaliated against him for his filing of this lawsuit. (ECF No. 10.)

On April 2, 2019, Lt. Stavolla ordered an investigative search of Mr. Banks' cell. The last such search occurred in mid-March. CO Gass and CO Musslemen entered Plaintiff's cell, required both he and his cellmate (who is also Native American) to submit to a strip search. Both inmates advised the officers that their cell contained "sacred religious items and relics". (*Id.* at 1.) Mr. Banks' cell contained native feathers, sage, and prayer alters. Medicine bags "made from altered state boots" that officers let Plaintiff keep were also in the cell. (*Id.* at 2.) GP Gass and CO Musslemen began destroying the cell and were in search of "altered religious items." (*Id.*) In the process of dismantling and confiscating the prayer alters, the officers destroyed them. Mr. Banks' sacred headbands were confiscated while those belonging to his cellmate were not. (*Id.*) Mr. Banks' argues that the confiscation was in retaliation for his filing of grievances and his present lawsuit. He seeks the return of all religious items (altered pipe; altered rugs; altered pain brush; altered pants; altered wire; 2 loose razor blades; 1 altered pair of boots; altered sheet; altered magazine/paperwork; headband made from state boot; altered state blanket and sheet; altered state coat liner; altered knit hat;

dining hall plate; altered laundry loops; and a choker necklace)[2] and monetary damages from each defendant.[3] (*Id.*) Mr. Banks was notified by another inmate that the prison authorities "were targeting us Native Americans" and when Lt. Stavolla was asked about "messing with the Indian boys," Lt. Stavolla reportedly said it was because they "were makeing (sic) to (sic) many complaints/fileing (sic) grievances" which is evidence of retaliation. (*Id.* at 3.) The other inmate also told Mr. Banks that other inmates' cells would be searched "but it's really [Mr. Banks that Lt. Stavolla] wants." (*Id.*)

Mr. Banks filed his grievance "that day 4-2-19" but is scared to file more grievances because he does not "want this treatment to get worse." (*Id.*) He seeks injunctive, compensatory, and punitive damages from each Defendant who is sued in their individual capacity. (*Id.* at 4.)

Mr. Banks attaches the summary portion of the Native American Rights Fund's 1992 survey which reflects that ten states, including the Commonwealth of Pennsylvania's DOC failed to respond to the survey. (*Id.* at 11-12.) He also supplies declarations of other inmates stating that inmates of other religions have not had altered crosses confiscated during cell searches. (ECF No. 11.)

---

[2] *See Confiscation Items Receipt,* dated Apr. 2, 2019, ECF No. 10 at 20 - 21. CO Musslemen prepared a misconduct report against Mr. Banks following the investigative search.

[3] Mr. Banks admits to making most confiscated items by altering state property "for [his] personal Native American religious use". ECF No. 12. On April 9, 2019, Plaintiff surrendered 2 headbands; 2 bird feathers; 1 altered pillow, a braided cross; and an altered pair of pants. *See* ECF No. 14.

## IV.     Discussion

Section 1983 provides that persons acting under color of state law may be found liable if they deprive an individual of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *See* 42 U.S.C. § 1983. To state a § 1983 claim, a plaintiff must plead two essential elements: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 2254 - 55, 101 L.Ed.2d 40 (1998); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

### A.     Unexhausted Claims contained in the Supplemental Complaint

Pursuant to the Prison Litigation Reform Act (PLRA), a prisoner must pursue all available administrative remedies within the prison's grievance system before bringing a civil rights action concerning prison conditions in federal court. *See Ross v. Blake*, ____ U.S. _____ , _____, 136 S.Ct. 1850, 1856, 195 L.Ed.2d 117 (2016); 42 U.S.C. § 1997(e)(a) ("No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). Exhaustion in prisoner cases is mandatory. *Ross*, ____ U.S. at _____, 136 S.Ct. at 1856 – 57. The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 992, 152 L.Ed.2d 12 (2002).

Section 1997(e)(a) requires "proper exhaustion" of available administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 93, 126 S.Ct. 2378, 2387, 165 L.Ed.2d 368 (2006). "Proper" exhaustion requires a prisoner to "us[e] all steps that the agency holds out, and [to do] so *properly* (so that the agency addresses the issues on the merits)." (*Id.*) This means that the prisoner plaintiff must have completed "the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." (*Id.*) "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218, 127 S.Ct. 910, 923, 166 L.Ed.2d 798 (2007). Failure to comply substantially with the procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. *Spruill v. Gillis*, 372 F.3d 218, 227 – 32 (3d Cir. 2004); *Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 153 (3d Cir. 2016).

As previously noted, under the PLRA, "exhaustion is a precondition for bringing suit under § 1983." *Small v. Camden Cnty.*, 728 F.3d 265, 269 (3d Cir. 2013). A prisoner's failure to exhaust his available administrative remedies as to each claim raised is an affirmative defense to be pleaded and proven by the defendant. *See Ray v. Kerestes*, 285 F.3d 287, 295 – 96 (3d Cir. 2002). However, where an inmate's complaint shows a failure to exhaust a claim on its face, it is subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(6). *Jones*, 549 U.S. at 215, 127 S.Ct. at 921 ("A complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense … appears on its face.") (quoting *Loveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001)).

Compliance with, and the "availability" of administrative remedies is a question of law district courts can decide, without the presence of a jury, even if there are disputed facts. *See Small*, 728 F.3d at 270 – 71. However, prior to doing so, district courts must give "some form of notice to the parties and an opportunity to respond." *Paladino v. Newsome*, 885 F.3d 203, 211 (3d Cir. 2018). Here, because no further development of the record is necessary to address the exhaustion of Mr. Banks' claims set forth in the Supplemental Complaint against Lt. Stavolla, CO Gass and CO Musslemen related to the April 2, 2019-investigatory cell search, the Court can dismiss these claims *sua sponte*.

The DOC has a three-tiered grievance policy.[4] Pursuant to DC-ADM 804, inmates must first file a grievance with the Facility Grievance Coordinator at the institution where the events upon which the complaint is based occurred. The Facility Grievance Coordinator has fifteen working days to provide the inmate with a response. If dissatisfied with the initial review of his grievance, the inmate may appeal the decision to the Facility Manager (Superintendent) within fifteen working days from the date of the initial review response/rejection. The Superintendent will issue an appeal response within fifteen working days of receiving the appeal. Within fifteen working days of receiving the Superintendent's decision, the inmate may file an appeal with the Secretary's Office of Inmate Grievance Appeals (SOIGA). Generally, SOIGA has thirty working days to file a response.

There are no factual disputes regarding Mr. Banks' exhaustion of claims presented in the Supplemental Complaint. Mr. Banks initiated this action in March

---

[4] The Court takes judicial notice of the DOC's Inmate Grievance policy. *See* https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/804%20Inmate%20Grievances.pdf (last visited May 23, 2019).

2019. (ECF No. 1.) He filed a Supplemental Complaint on or about April 5, 2019 following an April 2, 2019 investigatory search of his cell. (ECF No. 10 at 21.) He filed a grievance related to the cell search on the same day it occurred, April 2, 2019. Because Mr. Banks filed his Supplemental Complaint after the initiation of this lawsuit and prior to exhausting the DOC's administrative remedy process for his claims related to the April 2, 2019-investigatory cell search and alleged retaliatory confiscation of his religious items, all claims contained within it are subject to dismissal. *See Ahmed v. Dragovich*, 297 F.3d 201 (3d Cir. 2002) (exhaustion requires completion of the entire administrative remedy process *prior* to filing suit) (emphasis added). Because it is apparent from the face of the Supplemental Complaint that Mr. Banks is barred from pursuing federal relief for claims related to the April 2, 2019-investigatory cell search in this action, this claim will be dismissed pursuant without leave to amend.[5]  Lt. Stavolla, CO Gass and CO Musslemen will be dismissed as Defendants.

### B.    The NNAPRAC Survey

While the Court is uncertain as to Mr. Bank's theory of liability against any of the Defendants based on the NNAPRAC survey. However, to the extent he claims a violation of his constitutional rights due to the DOC's failure to respond to it, or their failure to follow its recommendations, he fails to state a viable § 1983 claim.

Individual liability can be imposed under 42 U.S.C. § 1983 only if the state actor played an "affirmative part" in the alleged misconduct and culpability "cannot be predicated solely on the operation of respondeat superior." *Evancho v. Fisher*, 423 F.3d

---

[5] The Court's ruling does not preclude Mr. Banks from filing a separate action raising the same claim once he has exhausted his available administrative remedies.

347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)); *see also* *Sutton v. Rasheed*, 323 F.3d 236, 249 – 50 (3d Cir. 2003). A defendant "cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *C.H. ex rel. Z.H. v. Olivia*, 226 F.3d 198, 201 – 02 (3d Cir. 2000). Allegations that supervisor "had constructive knowledge of a subordinate's unconstitutional conduct simply because of his role as a supervisor" do not suffice. *Broadwater v. Fow*, 945 F.Supp. 2d 574, 588 (M.D. Pa. 2013) (citing *C.H. ex rel. Z.H.*, 226 F.3d at 202).

The NNAPRAC issued the survey over 27 years ago. Mr. Banks does not allege the personal involvement of any of the named Defendants in the alleged failure of the DOC to respond to it. Additionally, he does not suggest, and the Court is not aware of, any theory of liability based on the DOC's failure to respond to it.

To the extent Mr. Banks claims the DOC's failure to conform to the recommendations of the NNAPRAC study violates his First Amendment rights, he fails to state a claim. The United States Supreme Court, when looking at the standards of various professional corrections associations, such as the American Correctional Association (ACA), has held that "while the recommendations of these various groups may be instructive in certain cases, they simply do not establish the constitutional minima; rather, they establish goals recommended by the organization in question." *Rhodes v. Chapman*, 452 U.S. 337, 348, 101 S.Ct. 2392, 2400, 59 L.Ed.2d 59 (1981) (quoting *Bell v. Wolfish*, 442 U.S. 520, 543 – 44, 99 S.Ct. 1861, 1876 n. 27, 60 L.Ed.2d 447 (1979)). Therefore, Mr. Banks' argument that the Defendants violated his

constitutional rights by failing to comply with the NNAPRAC recommendations/standards announced in their survey fails to state a claim.

As Mr. Banks fails to demonstrate how the failure to respond to the survey, the personal involvement of any of the Defendants in that failure, or the prison official's failure to adopt the recommendations of the survey violate his constitutional rights, all claims related to NNAPRAC survey will be dismissed with prejudice.

### C. Claims against Secretary Wetzel, Chaplain McCoy and Superintendent Marsh

Mr. Banks alleges that Defendants Smith and Wenerowicz denied his request for religious accommodation to have a sweat lodge and that Secretary Wetzel "ignored [his] letters" challenging the decision. (ECF No. 1 at 4.) He claims Chaplain McCoy was informed of the violations "but did nothing." (*Id.*) While housed at SCI-Benner, Mr. Banks alleges that if Superintendent Marsh "would put for the right effort," the denial of a sweat lodge "could be changed". (*Id*. at 12.) Plaintiff does not allege that Secretary Wetzel, Chaplain McCoy or Superintendent Marsh were involved in the decision to deny his request for religious accommodation.

It is well-established that an allegation that an official ignored a prisoner's letter of protest or request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations. *See Rode*, 845 F.2d at 1208. "[T]he mere fact that an official receives and reviews a letter or grievance appeal is insufficient to establish personal involvement (*i.e.*, failure to respond or react does not establish that the official endorsed or acquiesced in the conduct at issue)." *Hennis v. Varner*, Civil Action No. 12-646, 2014 WL 1317556, at *9 (W.D. Pa. Mar. 31, 2014); *see also Moore*

*v. Mann*, Civil No. 3:CV-13-2771, 2015 WL 3755045, at *4 (M.D. Pa. June 16, 2015) ("[T]he mere fact that Defendant Wetzel may have learned about Plaintiff's claims through a piece of correspondence ... is not enough to impute liability to Wetzel.... [A]n allegation that an official ignored correspondence from an inmate ... is insufficient to impose liability on the supervisory official."); *Adderly v. Eidem*, Civil No. 3:CV-11-0694, 2014 WL 643639, at *6 (M.D. Pa. Feb. 19, 2014) ("Simply alleging that an official failed to respond to a letter or request Plaintiff may have sent raising complaints is not enough to demonstrate they had the requisite personal involvement."). Moreover, as Mr. Banks sets forth in his Complaint, his correspondence addressed to Secretary Wetzel regarding the denial of his sweat lodge request was forward to another individual (non-defendant) for review and response. *See* ECF No. 1 at 5. Mr. Banks has failed to demonstrate the personal involvement of Secretary Wetzel, Chaplain McCoy or Superintendent Marsh in the decision to deny his request for religious accommodation to have a sweat lodge. Accordingly, the Court will dismiss the § 1983 claim against these Defendants pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief can be granted. Mr. Banks will be granted leave to amend his claims against these individuals.

### D. Leave to Amend

Based on the above, any amendment to Mr. Banks' claim concerning the unexhausted claims presented in his Supplemental Complaint as well as claim related to the NNAPRAC survey would be futile. Therefore, these claims will be dismissed without leave to amend. What remains is Mr. Banks' generalized claims of his First and

Fourteenth Amendment rights violation based his inability to practice his Native American faith without access to a sweat lodge.

Mr. Banks will be granted twenty-one days to file an amended complaint alleging the personal involvement of each named Defendant. If Mr. Banks decides to file an amended complaint, he must clearly designate on the face of the document that it is his "Amended Complaint." It must bear the docket number assigned to this case, and it must be retyped (double spaced) or legibly rewritten (double spaced) in its entirety, preferably on the court-approved form. [6] In addition, the "amended complaint must be complete in all respects. It must be a new pleading which stands by itself as an adequate complaint without reference to the [Complaint or Amended Complaint] already filed." *Young v. Keohane*, 809 F. Supp. 1185, 1198 (M.D. Pa. 1992). In other words, the amended complaint will supersede (replaces) his original complaint. Consequently, all causes of action alleged in the original complaint which were not dismissed with prejudice (i.e. all claims except for those asserted in the supplemental complaint or based on the survey) and are not included in the amended complaint are waived.

Mr. Banks' amended complaint must be concise and direct. *See* Fed. R. Civ. P. 8(d). Each allegation must be set forth in individually numbered short and simple paragraphs. *Id.* The allegations should be specific enough as to time and place and should identify the person or persons responsible for the deprivation of his constitutional rights. His amended complaint should place each defendant on notice of how their

---

[6] In the "Caption" section of the amended complaint, Plaintiff must state the first and last name, to the extent he knows it, of each defendant he wishes to sue. Plaintiff should also indicate whether he intends to sue each defendant in his or her individual capacity, official capacity, or both.

actions (or inactions) led to the deprivation of his rights. *Iqbal*, 556 U.S. at 676, 129 S.Ct. at 1948.

Plaintiff must also specify the relief he seeks from each defendant. Mr. Banks' failure to file an appropriate amended complaint within the required time will result in this matter proceeding exclusively against Defendants Smith and Wenerowicz for their denial of his request for religious accommodation of a sweat lodge.

Finally, Plaintiff is reminded of his obligation to advise the Court of any change of address. *See* M.D. Pa. LR 83.18. His failure to do so will be deemed as his abandonment of the lawsuit resulting in the dismissal of the action.

### E. Motion for Counsel

Although prisoners have no constitutional or statutory right to appointment of counsel in a civil case, the Court has discretion to "request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1); *see also Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002); *Parham v. Johnson*, 126 F.3d 454, 456 – 57 (3d Cir. 1997); *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993). "Appointing counsel for an indigent civil litigant is 'usually only granted upon a showing of *special circumstances* indicating the likelihood of substantial prejudice to him resulting, for example, from his probable inability without such assistance to present facts and legal issues to the court in a complex but arguably meritorious case.' " *Parkell v. Danberg*, 833 F.3d 313, 340 (3d Cir. 2016) (quoting *Smith-Bey v. Petsock*, 741 F.2d 22, 26 (3d Cir. 1984)) (emphasis in original).

"[V]olunteer lawyer time is a precious commodity[,]" *Montgomery*, 294 F.3d at 499, so the decision to recruit counsel for an indigent prisoner should be exercised "discerningly." *Id.* at 505 n. 10. The Third Circuit Court of Appeals has provided guidance for the exercise of the district court's discretion in this regard. At the threshold, the Court must decide whether the plaintiff's case, "has some arguable merit in fact and law." *Id.* at 499. A court need not appoint counsel "if the indigent's chances of success on the merits are extremely slim." *Id.* at 500 (quoting *Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986) ) (internal quotation marks and brackets omitted). If the threshold requirement is met, the Court then considers a number of factors to determine whether to request counsel for an indigent party. These factors include: (1) Plaintiff's ability to present his own case; (2) the difficulty of the particular legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue investigation; (4) Plaintiffs capacity to retain counsel on his own behalf; (5) the extent to which a case is likely to turn on credibility determinations; and (6) whether the case will require testimony from expert witnesses. *Tabron*, 6 F.3d at 155 – 57. If the case "appears to have merit" and "most of the aforementioned [*Tabron* ] factors have been met," the Third Circuit "instruc[s]" that the district court "should make every attempt to obtain counsel." *Montgomery*, 294 F.3d at 505 (quoting *Parham*, 126 F.3d at 461) (internal quotation marks omitted) (alteration in original).

Mr. Banks seeks the appointment of counsel based on his indigent status, his inability to conduct research and lack of knowledge in the law, as well as his mental health which makes him "extremely unstable especially in sensitive situations" as he is likely to "explode in anger in the courtroom." (ECF No. 2.) At this moment, the Court

cannot assess the complexity of the case or Plaintiff's likelihood of success on the merits until it receives Mr. Banks' amended complaint or Plaintiff notifies the Court of his wish to proceed exclusively on his claim against Defendants Smith and Wenerowicz for the denial of his request for religious accommodation. Therefore, the Court will deny Mr. Banks' motion for appointment of counsel without prejudice.

An appropriate order follows.


**Date: May 30, 2019**                              /s/ A. Richard Caputo
                                                    **A. RICHARD CAPUTO**
                                                    **United States District Judge**